# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GALLANT DILL and CHASE CLINE, | **Civil Action No. 22-6116 (SRC)** |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| JARED YELLIN, CILA LABS, LLC, a Delaware limited liability company, CILA INCUBATOR PRIVATE LIMITED, and PROJECT 10K, LLC (f/k/a 10X INCUBATOR, LLC), a Delaware limited liability company, | |
| Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court on a motion to disqualify Plaintiffs' counsel Michael R. Smikun, Esq. pursuant to Local Civ. R. 103.1(a) and N.J. Ct. R. R.P.C. 3.7(a) by defendants Jared Yellin ("Yellin"), CILA Labs, LLC, CILA Incubator Private Ltd., and Project 10K, LLC (f/k/a 10X Incubator, LLC) (collectively, "Defendants"). Plaintiffs Gallant Dill ("Dill") and Chase Cline ("Cline") (collectively, "Plaintiffs") oppose the motion and request that, to the extent the Court considers the merits of Defendants' motion, Plaintiffs should be permitted to resubmit their earlier motion to disqualify Defendants' counsel. (ECF No. 38). The Court heard oral argument on the motion on April 30, 2024. For the reasons that follow, the motion, as well as Plaintiffs' request, will be denied.

**I**

This case arises from a dispute between two groups of technology industry investors and entrepreneurs.[1] Gallant Dill and Chase Cline partnered with Jared Yellin and his companies to develop a software called Business Toolkit. That collaboration ended after disagreements between the three named parties. The parties entered into a Termination Agreement on June 29, 2022. Plaintiffs sued over various aspects of the business relationship, and Defendants counterclaimed over Plaintiffs' violations of the Termination Agreement's Non-Disparagement Clause and associated statements. (ECF Nos. 4 & 72). Both the Complaint and Counterclaims survived motions to dismiss in substantial part. (ECF Nos. 23, 36, 94).

Defendants now move to disqualify Plaintiff's Counsel Michael R. Smikun, Esq. ("Smikun") under New Jersey Rule of Professional Conduct 3.7(a), New Jersey's rule against a lawyer serving as an advocate in a case where the lawyer is likely to be a necessary trial witness. RPC 3.7(a). Defendants argue that Smikun is a necessary trial witness because his trial testimony is the sole source of information relating to three areas of likely trial inquiry. First, Smikun purportedly engaged in defamatory contacts with the founders of various tech companies who partnered with Yellin (the "Portfolio Founders").[2] Second, Smikun purportedly communicated with Tom Warren, a journalist at <u>HuffPost</u> whose 2023 article about Grant Cardone, Yellin's 10X Incubator co-founder, included several paragraphs about Yellin's business dealings and the lawsuits against him. <u>See</u> Exhibit A to Plaintiff's Opposition to Motion to Disqualify (ECF No. 99-1) (hereinafter "<u>HuffPost</u> Article"); Tom Warren, <u>Financial Influencer Grant Cardone Says He Can Make You A Billionaire. His Investors Claim He Defrauded Them.</u>, HuffPost (Jul. 20, 2023,

---

[1] More fulsome factual and procedural background can be found in the various opinions this Court has issued in this case. <u>See</u> ECF Nos. 23, 36, 94.

[2] The Court dismissed all portions of the Counterclaims relying upon these allegations. <u>See</u> ECF No. 94 at pp. 13, 20 n.8, 23 n.9.

5:45                                        AM), https://www.huffpost.com/entry/grant-cardone-financial-influencer_n_64ada368e4b0e87d65574e9b   [https://perma.cc/54PM-MNGQ].   Finally,  Smikun made social media posts and comments relating to the HuffPost Article, this lawsuit, and lawsuits in which he represents other plaintiffs against Yellin and his companies. All three areas of inquiry form the basis for various counterclaims, and Defendants argue that Smikun is the sole source of information relating to all of these areas. Defendants also argue that the timing of this motion is appropriate because (1) Smikun's status as a necessary trial witness only became apparent after Plaintiffs failed to produce certain responsive documents, and (2) unlike Plaintiffs' earlier motion to disqualify Defendants' counsel,[3] which centered on a previously known conflict of interest, this motion to disqualify centers on Smikun's status as a necessary trial witness.

## II

Rule 3.7(a), applicable to attorneys practicing before this court via L. R. Civ. P. 103.1, provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

RPC 3.7(a). Smikun raises two main objections to the disqualification motion. First, that Defendants have waived their right to bring this motion because they were aware of the likelihood that Smikun would be a necessary trial witness at a much earlier stage in this litigation. Second,

---

[3] Judge Kiel found that Plaintiffs waived their right to challenge Becker LLC's representation of Defendants and denied the earlier disqualification motion. See ECF No. 60 at ¶ 10.

on the merits, that Defendants have not met their burden to put forward evidence that Smikun would be a necessary trial witness.

### A

"Once counsel recognizes that opposing counsel is likely to be a necessary witness, a motion to disqualify opposing counsel should be made, lest the right to move for disqualification may be waived if not timely made." Host Marriott Corp. v. Fast Food Operators, Inc., 891 F. Supp. 1002, 1010 (D.N.J. 1995) (quoting Freeman v. Vicchiarelli, 827 F. Supp. 300, 302 (D.N.J. 1993)) (internal quotations and modifications omitted). Five factors guide the analysis of whether a party has waived its right to move for disqualification: "(1) the length of delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred, and (5) whether disqualification would result in prejudice to the non-moving party." Rohm and Haas Co. v. American Cyanamid Co., 187 F. Supp. 2d 221, 229 (D.N.J. 2001) (quoting Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1115 (D.N.J. 1993) (collecting cases)). "The essence of this analysis is whether the party seeking disqualification appears to use the disqualification motion as a tactical maneuver." Id. at 229-30.

Applying the Alexander factors, Defendants have not waived their right to move for disqualification. Regardless of which date marks the inception of Defendants' knowledge of the conflict,[4] the first and second factors do not weigh in favor of waiver. 232 days (or seven months

---

[4] The parties disagree on when Defendants knew that Smikun would likely be a necessary trial witness. Defendants contend in their motion that this period began on November 27, 2023, when Plaintiffs produced purportedly deficient responses to Defendants' discovery requests, because it was only at that time that Smikun's necessity as a trial witness became apparent. (ECF No. 93 at pp. 5-6). Plaintiffs contend that this period began on July 28, 2023 or thereabouts, when Defendants filed their Answer and Counterclaims, because at that time, Defendants knew that Smikun's conduct would be at the center of their counterclaim case. (ECF No. 99 at pp. 19-23); see also Defendant's Answer and Counterclaims (ECF No. 41).

and seventeen days) passed between Defendants' filing of their Counterclaims on July 28, 2023 and the instant motion on March 15, 2024. This delay, the longer of the two periods propounded by the parties, is far shorter than delays found to weigh in favor of disqualification in other cases. See, e.g., Rohm and Haas, 187 F. Supp. 2d at 230 (finding a delay of two and a half years to support waiver); Alexander, 822. F. Supp. at 1115 (three years). On the third, all parties were represented by counsel for the full duration of the period between Defendants' awareness of the conflict (whether that period began on July 28, 2023 or November 27, 2023) and the pendency of this motion. On the fourth, the delay occurred because the Defendants awaited discovery responses that might have rendered Smikun unnecessary as a trial witness—a legitimate justification given the gravity of the disqualification remedy. And on the fifth, the level of hardship that disqualifying Smikun would impose is low, as Defendants only seek to disqualify Smikun himself, rather than the entire Callagy Law Firm, from serving as counsel at trial. See Main Event Prods., LLC v. Lacy, 220 F. Supp. 2d 353, 356 (D.N.J. 2002) (holding that disqualification under RPC 3.7(a) does not apply to pretrial proceedings).

Taken together, application of the Alexander factors to this case does not evince a conclusion that the delay was a tactical maneuver. Rohm and Haas, 187 F. Supp. 2d at 230. Therefore, Defendants have not waived their right to make this disqualification motion.

**B**

"It is well settled that because motions to disqualify can have such drastic consequences, courts disfavor such motions and grant them only 'when absolutely necessary.'" Rohm and Haas, 187 F. Supp. 2d at 226 (quoting Alexander, 822 F. Supp. at 1114). The burden falls on the party seeking disqualification to put forth enough evidence to establish the likelihood that the attorney will be a necessary witness at trial. Oswell v. Morgan Stanley Dean Witter & Co., Inc., No. 06-

5814, 2007 WL 2446529, at *3 (D.N.J. Aug. 22, 2007) (citing Kroungold v. Trister, 521 F.2d 763, 766 (3d Cir. 1975)); see also Host Marriott Corp., 891 F. Supp. at 1010 (denying motion to disqualify for movant's failure to put forth evidence evincing likelihood that counsel is likely to be a necessary trial witness). While parties have an obligation to move for disqualification as soon as they become aware of the RPC 3.7(a) conflict, the drastic nature of the disqualification remedy imposes upon courts an obligation to ensure that disqualification is ripe and upon the parties to establish timeliness. Alexander, 822 F. Supp. at 1114. Courts in this District and others within the Third Circuit regularly find that motions to disqualify under RPC 3.7(a) (and other state analogues) are premature where it is not yet clear that opposing counsel will be a necessary trial witness. See, e.g., Kamden-Ouaffo v. Task Mgmt. Inc., No. 17-7506, 2018 WL 11463833, at *1-2 (D.N.J. May 8, 2018) (denying motion to disqualify as premature because plaintiff can depose counsel and ascertain necessity of trial testimony); Dombrowski v. Gov. Mifflin Sch. Dist., No. 11-1278, 2011 WL 1884019, at *3 (E.D. Pa. May 16, 2011) (denying motion to disqualify under Pennsylvania analogue to RPC 3.7(a) as premature and noting that counsel conceded at oral argument Defendant would suffer no prejudice if motion is "tabled for the time being"); Constantino v. Atlantic City, No. 13-6667, 2014 WL 12607786, at *4 (D.N.J. Oct. 21, 2014) (denying motion to disqualify as premature because "at this time it is not clear that [Plaintiff's attorney] is a necessary trial witness"); Dantinne v. Brown, No. 17-0486, 2017 WL 2766167, at *5 (D.N.J. Jun. 23, 2017) (same).

Defendants have not met their burden at this time to put forward evidence proving that Smikun would be a necessary trial witness. All three of their substantive arguments for disqualification hinge on interactions for which it is not yet clear that Smikun's trial testimony would be the sole source of information.

With respect to the Portfolio Founders contacts, Defendants appear to make a judicial economy-focused argument about having Smikun, a single witness, testify to his interactions with "over 100 sets of Co-Founders." (ECF No. 93 at p. 12). But, to date, Defendants have only presented the Court with two documents showing that these interactions even happened. See (ECF No. 93 at p. 4 nn.1-2) (produced to the Court for *in camera* inspection). The necessity of calling two witnesses instead of Smikun certainly does not justify the "drastic consequence[]" of disqualification.[5] Rohm and Haas, 187 F. Supp. 2d at 226. Additionally, this Court dismissed all parts of the Counterclaims which rely on these allegations. (ECF No. 94 at pp. 13, 20 n.8, 23 n.9). Naturally, because Defendants filed this motion prior to the issuance of this Court's opinion dismissing those elements of the counterclaims, they did not have an opportunity to cure the deficiency. But this too militates against finding that the time is ripe to consider a disqualification motion: the two documents currently in the record that support the Portfolio Founders allegations, even assuming they are sufficient for amended counterclaims to survive a motion to dismiss, can easily be probed via the custodians of those two documents, rather than Smikun himself.

With respect to Smikun's contacts with Tom Warren, the HuffPost Article author, Defendants have not indicated that Smikun's trial testimony is the only source of the information at issue. Defendants have subpoenaed Buzzfeed, Inc. (the corporate parent of HuffPost) "regarding any communications that took place between Mr. Warren, the reporting outlets, and [Plaintiffs] and/or Mr. Smikun." (ECF No. 86 at p. 1). True enough, Buzzfeed has entered an appearance and

---

[5] Defendants argue more generally that "information on all Topics of Inquiry are easily discoverable through Smikun . . . via party discovery." (ECF No. 93 at 17). But, as with their argument with respect to the Portfolio Founders allegations, they offer no justification or support for why this judicial economy concern should outweigh the seriousness of disqualifying opposing counsel. On the contrary, their acknowledgement that the documents and information can be obtained by some method other than through Smikun's trial testimony cuts directly against their arguments for disqualification.

moved to quash Defendants' subpoena, invoking New Jersey's Shield Law. (ECF No. 109). <u>See</u>
N.J. Stat. Ann. § 2A:84A-21; <u>In re Venezia</u>, 191 N.J. 259, 274 (2007). But Judge Almonte has not
yet ruled on the motion to quash. And the motion itself makes clear that Warren is no longer
affiliated with Buzzfeed, so the success or failure of a subpoena to Warren himself is yet
undetermined. (ECF No. 109 at pp. 10-11). Perhaps the motion to quash will be granted, and
perhaps Mr. Warren will move to quash a direct subpoena in his own right. Perhaps Smikun's trial
testimony would become the only source of information relating to these communications at that
time, but not before. Even assuming Defendants cannot obtain discovery from Buzzfeed and Mr.
Warren, Defendants have not made clear why Smikun's *trial* testimony would be required over
and above deposition testimony, stipulations, interrogatories, or other forms of party discovery.

Finally, with respect to Smikun's social media posts, while Smikun indeed is the only
person who can testify about his own "intent, purpose, and strategy" (ECF No. 93 at p. 17), none
of the claims that rely upon the posts require inquiry into these elements. This Court sustained
allegations relating to these posts because they were attributable to Dill and Cline as violations of
the Non-Disparagement Clause (ECF No. 94 at pp. 9-10), sufficient to present an alternate ground
for the defamation counts (though again, as attributable to Dill and Cline rather than in Smikun's
own right) (ECF No. 94 at p. 14), and supportive of the malice prong of the tortious interference
analysis (ECF No. 94 at p. 23). Smikun's "intent, purpose, and strategy" are relevant insofar as he
was acting on his clients' behalf. His clients themselves are more than capable of—and, indeed,
should expect to—testify as to their "intent, purpose, and strategy" in directing Smikun to take
these actions.

At bottom, Defendants have not proven that Smikun's testimony at trial is likely to be
necessary. Defendants only seek disqualification of Smikun as *trial* counsel. They are free to

depose him, request documents, and take full advantage of all the discovery tools available to them under the Federal Rules of Civil Procedure. Smikun's ability to participate fully in pretrial proceedings, see Main Event Prods., 220 F. Supp. 2d at 356, combined with the strong presumption against disqualification under RPC 3.7(a), means that Smikun could only be a likely necessary trial witness if all of those tools prove unavailing. See, e.g., Dombrowski, 2011 WL 1884019, at *3 (denying motion to disqualify because little discovery had taken place and target of disqualification motion had not yet been deposed). At this stage of the litigation, that is not the case.

Therefore, Defendants' motion to disqualify will be denied as premature.[6]

\* \* \*

---

[6] Plaintiffs also request that, to the extent the Court considers Defendants' motion on the merits, the Court also reconsider their earlier motion to disqualify counsel for Defendants. Regardless of whether the Court's denial of the motion as premature is a merits determination, Plaintiffs' request is denied. The earlier motion was predicated on a conflict that was apparent at the outset of litigation; this motion is predicated on a conflict that has not yet crystallized and perhaps never will. Judge Kiel's finding of waiver on the earlier motion and this Court's finding of no waiver on this motion put the two motions in entirely different postures. See (ECF No. 60 at ¶¶ 11-14). As such, there is no inequity between any consideration of this motion and the earlier motion.

This Court has previously observed that "courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just as likely—encouragement of vexatious tactics, which increase public cynicism about the administration of justice." <u>Carlyle Towers Condominium Ass. v. Crossland Savings, FSB</u>, 994 F. Supp. 341, 345 (D.N.J. 1996). That principle is especially applicable in this case, where the Court now rules against disqualification for a second time. While the denial of this motion is without prejudice to a future motion if further discovery proves that Smikun is indeed a necessary trial witness, the parties should exercise caution before continuing to litigate in a manner that risks "encourag[ing] vexation tactics" and "increas[ing] public cynicism about the administration of justice." <u>Id.</u>

For these reasons,

**IT IS** on this 2nd day of May, 2024

**ORDERED** that Defendants Jared Yellin, CILA Labs, LLC, CILA Incubator Private Ltd., and Project 10K, LLC (f/k/a 10X Incubator, LLC)'s motion to disqualify counsel Michael R. Smikun, Esq. (Docket Entry No. 93) is **DENIED**.

s/Stanley R. Chesler<br>
STANLEY R. CHESLER, U.S.D.J.

Dated: May 2, 2024